NOT FOR PUBLICATION                                                                    CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOVATIVE TECHNOLOGY DISTRIBUTORS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ORACLE AMERICA, INC and ORACLE CORPORATION, <br><br> Defendants. | Civil Action No.: 11-1371 (JLL) <br><br> OPINION |

**LINARES**, District Judge.

This matter comes before the Court on Defendants', Oracle America, Inc. and Oracle Corporation (collectively "Oracle" or "Defendants"), motion to dismiss Plaintiff Innovative Technology Distributors, LLC's ("ITD" or "Plaintiff") Complaint in its entirety for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, transferring this action to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404. The Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court declines to dismiss Plaintiff's Complaint but grants Defendants' motion to transfer.

**I.     BACKGROUND**

ITD is a privately held limited liability company based in Edison, NJ. Complaint ("Compl.") ¶ 9. On June 29, 2005, ITD entered into an agreement with Sun Microsystems, Inc.

"Sun"), a corporation with its principle place of business in California, whereby ITD was permitted to order products and/or services from Sun under the terms specified in the agreement (the "Sun-ITD Agreement"). Compl. ¶¶ 10-11. As a retailer of Sun's information technology products, ITD purchased Sun's hardware and integrated it with other hardware and software components, and resold those products to end user customers. Compl. ¶ 17; Declaration of Sean J. Kirby ("Kirby Decl."), Ex. C at Ex. A.

The Sun-ITD Agreement is comprised of two documents: the General Terms and the iForce Business Terms Exhibit. The "General Terms" contract was a form marked as Sun's "US_Template" and contained blanks reserved for the reseller's name, address, the contract's reference number, and the seller's signature. Kirby Decl., Ex. C at Ex. A. Section 8 of the General Terms, entitled Dispute Resolution, provides that:

> The parties will use reasonable efforts to resolve any dispute arising out of the General Terms of any Exhibit through a meeting of appropriate managers from each party. If the parties are unable to resolve the disputes, either party may escalate the dispute to its executives. If an executive level meeting fails to resolve the dispute within thirty (30) days after escalation, either party may seek legal relief.

Id.., Ex. C at Ex. A at § 8. Section 9.1 further provides that "[a]ll disputes will be governed by the laws of California. The venue for litigation will be the appropriate courts located in Santa Clara County, California." Id., Ex. C at Ex. A at § 9.1. Section 9.4 provides that:

> [n]either the General Terms nor any Agreement is intended to create a partnership, franchise, joint venture, agency, or a fiduciary or employment relationship. Neither party may bind the other party or act in a manner which expresses or implies a relationship other than that of independent contract.

Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Brief") at 5.

The Sun-ITD Agreement was executed in New Jersey. John O'Brien, who was in 2005

employed as ITD's General Counsel on a contract basis, executed the agreement on behalf of ITD. Id.; Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss ("Pl. Brief") at 8. Defendant maintains that the terms of the contract were negotiated between the parties. Def. Brief at 3. However, Plaintiff asserts that the "General Terms" Contract was not negotiable, and in fact ITD was not permitted to change any of the terms in the form contract. Pl. Brief at 8.

On September 25, 2009, Sun and ITD executed Amendment 1 to the Sun-ITD Agreement ("Amendment 1"). Kirby Decl., Ex. C at Ex. B. Amendment 1 provides that, except as otherwise provided by Amendment 1, all terms of the Sun-ITD Agreement remain unchanged and in full force and effect. Def. Brief at 5. By its terms, Amendment 1 incorporated the Dispute Resolution and Venue Provisions contained in the original Sun-ITD Agreement. Id.

In January 2010, Defendant Oracle America acquired Sun and succeeded its rights under the Sun-ITD Agreement. Compl. ¶¶ 10-11, 52. At the time of the acquisition, Sun's former head of sales noted to the press, "We built a great franchise, we built an awesome franchise at Sun Microsystems . . ." Id. ¶ 52. Sun was renamed Oracle America, Inc. Def. Brief at 8.

On July 1, 2010, Oracle sent a notice of termination to ITD on July 1, 2010. Compl. ¶ 3. However, Oracle then retracted the notice of termination stating it was "sent in error." Id. On September 30, 2010, Oracle sent another notice of termination effective December 31, 2010. Compl. ¶ 77. This notice purported to terminate all of the existing agreements between ITD and Oracle, but Oracle represented to ITD that it would send a new contract to cover ITD's existing business structure that would go into effect after December 31, 2010. Compl. ¶ 78. Plaintiff claims that it was during this period, that Oracle "effectively terminated ITD" by: (1) eliminating the discounts that Sun had previously provided to ITD that "allowed ITD to operate as a

Sun/Oracle franchisee;" and (2) delaying price quotes so that ITD could not deliver products to its customers in a "reasonable period of time."  Id.

In its Complaint, Plaintiff claims that "despite repeated assurances dating back to February 2010, Oracle provided no [] workable contract.  Instead, Oracle presented ITD with an inapplicable Full Use Distribution Agreement (the "FUDA")", which according to Plaintiff, Oracle required ITD to sign by October 15, 2010.  Compl. ¶ 79.  Plaintiff does not indicate when it was provided with the FUDA or if Plaintiff actually ever signed it.  Plaintiff also asserts in its Complaint that a new contract was eventually provided to ITD on December 29, 2010 and that Oracle demanded that ITD sign "[]on 24 hours' notice[] an onerous contract that eliminated ITD's ability to sell any Oracle products except in very limited circumstances."  Compl. ¶ 4.  Later in its Complaint, Plaintiff states that on December 29, 2010 Oracle sent ITD an "amendment" to the existing Sun Agreement, which Oracle required that Plaintiff sign within 24 hours.  Compl. ¶ 86.

The parties executed  "Amendment 2" to the Sun-ITD Agreement on January 4, 2011.  Def. Brief at 5.  Amendment 2 provided that, except as otherwise provided by Amendment 2, all terms of the Sun-ITD Agreement would remain unchanged and in full force and effect until June 30, 2011.  Def. Brief at 5-6.  Plaintiff alleges that this amendment constructively terminated what remained of ITD's business as an "Oracle Franchisee" by failing to honor discounts previously provided by Sun, limiting the scope of the agreement to six months, and limiting ITD to essentially only two customers — Alcatel-Lucent and Motorola.  Compl. ¶ 87.  Amendment 2 incorporated the Dispute Resolution and Venue Provisions contained in the Sun-ITD Agreement.  Def. Brief at 6.

According to Defendant, ITD has failed to pay Oracle over $19 million in invoices that Oracle submitted to ITD on purchases of Oracle products that it made for resale to end user customers. Id. ITD maintains that it does not owe that amount in light of Oracle "creating havoc with ITD's valued customers, terminating ITD as a reseller, ruining ITD's business and destroying ITD's credit facility." Compl. ¶ 132. Indeed, ITD alleges, *inter alia*, that Oracle breached an agreement to make ITD whole for the $11.3 million worth of "Last Time Buy" inventory that Sun had asked ITD to purchase on behalf of a key customer, Motorola. Pl. Brief at 10. Plaintiff further alleges that Oracle breached its promise to provide ITD with "integration work," even though ITD spent over $1 million expanding its integration capabilities in reliance on Oracle's representations. Pl. Brief at 10.

By his own admission, on February 2, 2010, Oracle Vice President Nigel Ball escalated the parties' dispute to the "executive level," as defined in the Sun-ITD Agreement.[1] Def. Brief at 6-7. On February 9, 2010, Oracle received a letter from ITD in which ITD invoked the 30-day Dispute Resolution period (the "30-day provision") and stated that: "If a resolution cannot be reached within the next 30 days, ITD will have no choice but to pursue its claims against Oracle." Id. at 7. On February 25, 2011, Oracle responded to ITD's February 9th letter, acknowledging the invocation of the 30-day provision and confirming that the parties would meet on March 1, 2011 to discuss a possible resolution of the dispute. Def. Brief at 7. No resolution was reached at the March 1st meeting.

---

[1] As stated, according to the Sun-ITD Agreement, "If the parties are unable to resolve the disputes, either party may escalate the dispute to its executives. If an executive level meeting fails to resolve the dispute within thirty (30) days after escalation, either party may seek legal relief." Kirby Decl., Ex. C at Ex. A at § 8.

On March 2, 2011, Plaintiff commenced this action by filing a summons and complaint with the Superior Court of New Jersey, alleging causes of action for, *inter alia*, violation of the New Jersey Franchise Practices Act ("NJFPA") and tortious interference with contract and prospective economic advantage (the "New Jersey Action"). Def. Brief at 8. Defendant claims that ITD violated the 30-day provision by filing this Complaint on March 2. Def. Brief at 8-9. On March 10, 2011, Defendant filed a Notice of Removal of the Superior Court Action with the United States District Court for the District of New Jersey.

On March 7, 2010, Oracle filed a complaint against ITD in the United States District Court for the Northern District of California alleging that ITD breached the Sun-ITD Agreement by failing to pay Oracle over $19 million on past due invoices. Def. Brief at 9. This action has been assigned to the Honorable Lucy Koh and is captioned Oracle America, Inc. v. Innovative Technology Distributors, LLC, Case No. 5:11-cv-01043-LHK. Id.

On March 21, 2011, Oracle filed the instant motion to dismiss the New Jersey Action for improper venue under Federal Rule of Civil Procedure 12(b)(3), or, in the alternative, to transfer this action to the federal court in California under 28 U.S.C. § 1404.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) permits a party to file a motion to dismiss for improper venue in response to a pleading. Fed. R. Civ. P. 12(b)(3). A party moving for dismissal bears the burden of showing that venue does not lie. Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982). The statutory requirement for establishing venue in a federal district court is provided by 28 U.S.C. § 1391, and in a case such as this, where jurisdiction is predicated upon diversity of citizenship, subsection (a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought

28 U.S.C. § 1391(a). The Third Circuit has stated that the purpose of the venue statute is generally to "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) (quoting LeRoy v. Great W. United Corp., 443 U.S. 173, 83-84 (1979)).

Where venue is proper, under certain circumstances, a matter may nonetheless be transferred pursuant to 28 U.S.C. § 1404. Salovaara v. Jackson Nat'l. Life Ins. Co., 246 F.3d 289, 298 (3d Cir. 2001). Transfer from a proper venue may be permissible where "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. In weighing whether a transfer is proper, this Court must weigh a broad range of private interests, public interests, and concerns related to the administration of justice. The authority to transfer a case under § 1404 is broader than a court's authority under the doctrine of *forum non conveniens*: 1404 permits the exercise of discretion in weighing whether the transfer of a case is proper. Plum Tree, Inc. v. Stockment, 488 f.2d 754, 756 (3d Cir. 1973).

Lastly, the enforeceability of a forum selection clause is determined as a matter of federal law. Cadapult Grpahic Systems, Inc. v. Tektronix, Inc., 98 F. Supp. 560, 563 (D.N.J. 2000) (citing Jumara v. State Farm Ins., Co., 55 F.3d 873, 877 (3d Cir.1995)). Forum selection clauses are presumptively valid. M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Such

clauses will not be set aside unless the objecting party can establish that: (1) the clause was procured as the result of fraud or overreaching; (2) enforcement would violate the strong public policy of the forum; or (3) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.  Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983), cert. denied, 464 U.S. 938 (1983) (citing Bremen, 407 U.S. at 10).  The party objecting to the enforcement of a forum selection clause bears the "heavy burden" of demonstrating why they should not be bound by their contractual choice of forum.  Pemaguid Underwriting Brokerage, Inc. v. Mutual Holdings (Bermuda), Ltd., 2003 U.S. Dist. LEXIS 26480 *14 (D.N.J. June 3, 2003) (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).

### III.   ANALYSIS

As an initial matter, this Court finds that venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(a)(2).  It is clear that a substantial part of the events or omissions giving rise to the instant claim occurred in New Jersey as Plaintiff is a New Jersey company that keeps almost all of its offices in New Jersey, and the Sun-ITD Agreement was executed in New Jersey.  The Court now turns to whether, although venue is proper in New Jersey, transfer is appropriate in light of the forum selection clause and pursuant to 28 U.S.C. § 1404.

The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985).  Plaintiff argues that the forum selection clause contained in the Sun-ITD Agreement is unenforceable because it contravenes the "strong public policy of New Jersey's Franchise Practices Act [the "NJFPA"]." Pl. Brief at 12.  In fact,

Plaintiff's entire argument relies on Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc., 146 N.J. 176 (1996), and its progeny.  In Kubis, the Court held that the California forum selection clause in Sun's contract was "presumptively invalid" because such a clause substantially undermined the protections New Jersey intended to afford its franchisees.  Id. at 192-97.  Plaintiff incorrectly interprets this holding as intending to establish an irrebuttable presumption that forum selection clauses are always invalid in NJFPA cases, and not as the case actually states, that forum selection clauses only begin as presumptively invalid in NJFPA cases.

     As an example of this misguided interpretation, Plaintiff points to Park Inn Int'l v. Mody Enters., Inc., wherein the Court wrote "[i]ndeed, outside of Franchise Practices Act cases, New Jersey courts routinely find forum selection clauses prima facie valid and enforceable." 105 F. Supp. 2d 370, 373-74 (D.N.J. 2000).  However, Plaintiff's reliance on Park is erroneous for several reasons.  First, Plaintiff fails to point out that in Park, the court rejected the argument that the public policy concerns of New Jersey, as described in Kubis, always invalidated the forum selection clauses.  Id. at 374 ("The Court rejects defendants' argument that the policy of [] New Jersey as announced in Kubis requires invalidation of the forum selection clause or that Kubis has modified the New Jersey law of forum selection clauses . . .") (internal citations omitted). Rather, at most, cases such as Kubis and Park merely asserts that in NJFPA cases, forum selection clauses are prima facie invalid, in which case the burden shifts to their proponent to prove their validity. Id. ("Kubis held that in cases governed by the NJFPA, forum selection clauses requiring suit outside this state were subject to a *rebuttable presumption* of invalidity.") (emphasis added).  Park and Kubis do not, as Plaintiff would have this court believe, stand for the proposition that forum selection clauses are always patently invalid in NJFPA cases.  Id. at

375.

Even taking Plaintiff's approach, that the forum selection clause is presumptively invalid, Defendants have met their burden of demonstrating that, in fact, the forum selection clause at issue is valid.  This Court rejects Plaintiff's argument that ITD did not have the opportunity to negotiate the forum selection clause and therefore it is a term of adhesion that makes the forum selection clause invalid.  That there "may not have been actual negotiations over a forum selection clause does not affect its validity."  Id. at 375 (citing Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991), cert. denied, 502 U.S. 908 (1991).

Similarly, the Court rejects Plaintiff's argument that because it was a new company at the time it entered into the initial Sun-ITD Agreement, it did not have any leverage to obtain favorable terms.  Pl. Brief at 8.  Plaintiff's own account of the circumstances surrounding this dispute undermine its contention that it was an unsophisticated party who entered into an agreement under duress.  Indeed, the initial Sun-ITD agreement was executed by Plaintiff's General Counsel; not an untrained professional without the capability to exact those concessions that were valuable to ITD.  Further, Amendment 1, which incorporated the same Dispute Resolution provision and Forum Selection Clause as the initial Sun-ITD agreement, was executed in 2009, long after ITD was merely, as Plaintiff alleges, a "fledgling company without any bargaining power."  Rather, by its own admission, in 2009, Plaintiff claims it was growing to a $100 million dollar company.  Compl. ¶ 7, 18.

Plaintiff's argument that transferring this matter to California would violate the public policy of New Jersey is misplaced.  The instant Opinion is limited to the question of venue, and does not purport to engage in a choice of law analysis.  Although the choice of law provision

contained in the Sun-ITD Agreement requiring the application of California law appears valid, such a determination cannot be made without a proper probe into the validity of such a provision. It is not completely implausible that the Court in California would choose to apply New Jersey state law, thereby affording Plaintiff's franchise, if franchise it be, protection under the NJFPA. However, such a decision is reserved to the Courts of the proper venue, in this case, the Northern District of California.  Application of New Jersey law, does not dictate that venue is also proper in New Jersey.

Even if this Court were to find that Kubis stands for the proposition that forum selection clauses are always invalid in NJFPA cases, Plaintiff has still failed to establish that it is even subject to the NJFPA.  See N.J.S.A. 56:10-3 ("'Franchise' means a *written arrangement* . . . in which a person grants to another person a license to use a trade name, trade mark, service mark, or related characteristic") (emphasis added).  The Sun-ITD Agreement states that it does not intend to create any relationship other than that of independent contractor, and specifically, that it does not create a franchise.  Kirby Decl., Ex. C at Ex. A § 9.4.  Plaintiff cites to an out-of-context comment made by Sun's former head of sales to demonstrate that, in actuality, Sun viewed the parties' agreement as creating a franchise.   However, Plaintiff's self-categorization as a franchise does not invalidate the terms of the validly bargained Sun-ITD Agreement, which explicitly states that ITD is not a franchise.

Thus, the Court finds that although venue is proper in the New Jersey, Plaintiff consented to a valid and enforceable forum selection clause and transfer to the Northern District of California is appropriate pursuant to 28 U.S.C. § 1404.

## IV. CONCLUSION

In light of the foregoing, Defendant's motion is granted to the extent that it seeks to transfer this action to the Northern District of California. An appropriate Order accompanies this Opinion.


Dated: April 25, 2011

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE